**13 CIV 7246**

JUDGE COTE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL STARK, REYNA GILLEAD, KENNA BRANER, and OSCAR RUIZ, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| HAIN CELESTIAL GROUP, INC., ZSBPW LLC, and BLUEPRINT WHOLESALE LLC, | |
| Defendants. | |

RECEIVED OCT 15 2013 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiffs Michael Stark, Reyna Gillead, Kenna Braner, and Oscar Ruiz (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against the Hain Celestial Group, Inc. ("Hain Celestial"), BluePrint Wholesale LLC ("BluePrint"), and ZSBPW LLC (collectively, "Defendants"). Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit related to Defendants' false claims that their fruit and vegetable juice products, BluePrintJuice[1] and BluePrintCleanse (the "Juice Products"), are "Unpasteurized" and "100% Raw." Defendants' Juice Products are neither unpasteurized nor

---

[1] Defendants currently offer six BluePrint Juices: (i) Gold (pineapple, apple, mint); (ii) Green (kale, apple, ginger, romaine, spinach, cucumber, celery, parsley, lemon); (iii) Red (apple, carrot, beet, lemon, ginger); (iv) Yellow (lemon, water, cayenne, agave); (v) Yellow 2 (lime, ginger, lemon, agave); and (vi) White (cashew, water, vanilla, cinnamon, agave).

raw, as they undergo a treatment process known as High Pressure Processing (also known as High Pressure Pasteurization or High Pressure Pascalization) ("HPP"), which neutralizes the benefits of the live enzymes, probiotics, vitamins, proteins, and nutrients that would otherwise be retained in a raw and unpasteurized juice.  Defendants misrepresent their Juice Products as "100% Raw," "Raw And Organic," and "Unpasteurized"[2] in an effort to appeal to health-conscious, raw-juice-drinking consumers.  By doing so, they are able to charge a significant price premium – roughly double the price of similarly sized, but properly labeled, HPP-treated juice products.

2.      Raw juices are a specific category of fruit and vegetable juices that are extracted in a manner designed to retain as many nutrients and live enzymes as possible.  Because raw juices are unpasteurized and untreated, they must be consumed within days of their production.  This short lifespan, in conjunction with the premium ingredients, makes raw juice quite expensive.  Nonetheless, more and more consumers specifically seek out and pay the premium for raw juice because of the health benefits that live enzymes, probiotics, nutrients, and vitamins offer over conventional, pasteurized juice.

3.      Defendants label and advertise the Juice Products as (a) "100% Raw," (b) "Unpasteurized," and (c) "Raw And Organic" (hereafter, together with the representations discussed below, the "Express Warranties" or the "Misrepresentations").  Moreover, the labeling and advertising represents that the Juice Products are "Never Heated," and expressly states that "BluePrint uses pressure instead of heat to keep our beverages fresh, raw and safe.  We don't cook juice!"  Finally, the label contains a "Manifreshto®" which lays out four "simple rules [Defendants] . . . live by," one of which is "Juice should never be cooked.  Cooking juice kills vitamins and live enzymes.  Even 'flash' pasteurized means cooked."

---

[2] Unlike the other Juice Products, the "White Juice" does not represent that it is "Unpasteurized." The bottle does, however, represent that it is "100% Raw" and "Raw And Organic."

4.       Each of Defendants' Misrepresentations is false and misleading.  The Juice Products are neither "Unpasteurized" nor "100% Raw."  The effects of HPP on the Juice Products are identical to those of traditional pasteurization – inactivated enzymes, inactivated probiotics, altered physical properties of the product, and denatured proteins, among other undesirable qualities.  As a result of Defendants' use of HPP, their Juice Products are nothing more than run-of-the-mill, pasteurized juices, and fail to provide the same nutrients, enzymes, and vitamins that the products have prior to being subjected to HPP.  This results in juices that purport to be "100% Raw" and "Unpasteurized," yet lack the characteristics and qualities traditionally associated with such products.

5.       Due in part to their false belief that Defendants' Juice Products were "100% Raw" and "Unpasteurized," consumers were willing to pay a premium of $5 to $7 more per bottle for Defendants' Juice Products over properly-labeled pasteurized juices.

6.       Defendants would not be able to charge a premium for their Juice Products without their false and misleading representations about the nature of the products.

7.       Plaintiffs seek relief in this action individually, and on behalf of a nationwide class of purchasers of the Juice Products for violation of the Magnuson Moss Warranty Act, breach of express warranty, breach of the implied warranty of merchantability, violation of California's Unfair Competition Law, violation of California's Consumers Legal Remedies Act, violation of California's False Advertising Law, unjust enrichment, and violation of New York Gen. Bus. Law § 349.

## JURISDICTION AND VENUE

8.       This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Plaintiffs, as well as most members of the proposed class are citizens of states different from the states of at least one of the Defendants.  In 2012, Defendants had revenues of $20,000,000. According to Hain Celestial's CEO Irwin Simon, revenues are expected to grow to $50,000,000 in 2013.[3]

10.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York, such that Defendants have significant, continuous, and pervasive contacts with the State of New York.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged mislabeling, misbranding, and marketing practices have been disseminated and committed in this District and because Defendants are subject personal jurisdiction in this District.

## THE PARTIES

12.     Plaintiff Michael Stark is a citizen of New York, residing in New York, New York.  During the class period, Plaintiff Stark purchased five 16-ounce bottles of Defendants' Juice Products for approximately $9.99 per bottle from a grocery store in New York City for his personal consumption.  Specifically, on February 26, 2013, Plaintiff Stark purchased "Red Juice" for $9.99, "Gold Juice" for $9.99, "Green Juice" for $9.99, "Yellow Juice" for $6.99, and "White Juice" for $11.99.  Prior to his purchases of the Juice Products, Mr. Stark reviewed the products' packaging and labeling.  The containers he purchased represented that Defendants' Juice

---

[3] *See* http://www.forbes.com/sites/clareoconnor/2013/07/24/juiced-up-inside-3-5-billion-organic-giant-hain-celestial-whole-foods-biggest-supplier/.

Products were "Unpasteurized,"[4] "100% Raw," and "Raw And Organic."  The containers also included a "Manifreshto," which provides "Juice should never be cooked.  Cooking juice kills vitamins and live enzymes.  Even 'flash' pasteurized means cooked."  Plaintiff Stark saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Juice Products he purchased were, in fact, 100% raw and unpasteurized.  He relied on these representations and warranties in deciding to purchase the Juice Products at a premium price.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Juice Products had he known that the Juice Products were, in fact, neither 100% Raw nor unpasteurized.  In reliance on these representations and warranties, he paid a tangible increased cost for the Juice Products, which were worth less than represented because the Juice Products were, in fact, equivalent to pasteurized juices.  He also understood that in making the sale, his grocery store was acting with the knowledge and approval of the Defendants and/or as the agent of the Defendants.  He further understood that the purchase involved a direct transaction between himself and Defendants, because the purchase came with Defendants' representations and warranties that the Juice Products were, in fact, 100% Raw and unpasteurized.

13.     Plaintiff Reyna Gillead is a citizen of California, residing in Valley Village, California.  During the class period, Plaintiff Gillead purchased many of Defendants' Juice Products for $9.99 per 16-ounces from a grocery store in Sherman Oaks, California for her personal consumption.  For example, Plaintiff Gillead purchased "Green Juice" on April 16, 2013 for $9.99.  Prior to her purchase, Ms. Gillead reviewed the product's labeling and packaging.  The containers she purchased represented that Defendants' Juice Products were "Unpasteurized," "100% Raw," and "Raw And Organic."  The containers also included a

---

[4] As discussed above, the "White Juice" variety does not represent that the product is "Unpasteurized."  It does represent that it is "100% Raw" and "Raw And Organic."

"Manifreshto," which provides "Juice should never be cooked.  Cooking juice kills vitamins and live enzymes. Even 'flash' pasteurized means cooked."  Plaintiff Gillead saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Juice Products she purchased were, in fact, 100% Raw and unpasteurized. She relied on these representations and warranties in deciding to purchase the Juice Products at a premium price.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Juice Products had she known that the Juice Products were, in fact, neither 100% Raw nor unpasteurized.  In reliance on these representations and warranties, she paid a tangible increased cost for the Juice Products, which were worth less than represented because the Juice Products were, in fact, equivalent to pasteurized juices.  She also understood that in making the sale, her grocery store was acting with the knowledge and approval of the Defendants and/or as the agent of the Defendants.  She further understood that the purchase involved a direct transaction between herself and Defendants, because her purchase came with Defendants' representations and warranties that the Juice Products were, in fact, 100% Raw and unpasteurized.

14.     Plaintiff Kenna Braner is a citizen of California, residing in Los Angeles, California.  During the class period, Plaintiff Braner purchased Defendants' Juice Product for $9.99 per 16-ounces from a grocery store in Glendale, California for her personal consumption. For example, Plaintiff Braner purchased "Green Juice" for $9.99 on April 18, 2013.  Prior to her purchase, Ms. Braner reviewed the product's labeling and packaging.  The container she purchased represented that Defendants' Juice Product was "Unpasteurized," "100% Raw," and "Raw And Organic."  The container also included a "Manifreshto," which provides "Juice should never be cooked.  Cooking juice kills vitamins and live enzymes. Even 'flash' pasteurized means cooked."  Plaintiff Braner saw these representations prior to and at the time of purchase,

and understood them as representations and warranties that the Juice Product she purchased was, in fact, 100% Raw and unpasteurized. She relied on these representations and warranties in deciding to purchase the Juice Product at a premium price. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Juice Product had she known that the Juice Product was, in fact, neither 100% Raw nor unpasteurized. In reliance on these representations and warranties, she paid a tangible increased cost for the Juice Product, which was worth less than represented because the Juice Product was, in fact, equivalent to pasteurized juice. She also understood that in making the sale, her grocery store was acting with the knowledge and approval of the Defendants and/or as the agent of the Defendants. She further understood that the purchase involved a direct transaction between herself and Defendants, because her purchase came with Defendants' representations and warranties that the Juice Products were, in fact, 100% Raw and unpasteurized.

15.     Plaintiff Oscar Ruiz is a citizen of California, residing in Porter Ranch, California. During the class period, Plaintiff Ruiz purchased Defendants' Juice Product for $9.99 per 16-ounces from a grocery store in Northridge, California for his personal consumption. For example, on April 3, 2013, Plaintiff Ruiz purchased "Red Juice" for $9.99. Prior to his purchase, Mr. Ruiz reviewed the product's labeling and packaging. The container he purchased represented that Defendants' Juice Products were "Unpasteurized," "100% Raw," and "Raw And Organic." The container also included a "Manifreshto," which provides "Juice should never be cooked. Cooking juice kills vitamins and live enzymes. Even 'flash' pasteurized means cooked." Plaintiff Ruiz saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Juice Product he purchased was, in fact, 100% Raw and unpasteurized. He relied on these representations and warranties in deciding to purchase the Juice Product at a premium price. Accordingly, these representations

and warranties were part of the basis of the bargain, in that he would not have purchased the

Juice Product had he known that the Juice Product was, in fact, neither 100% Raw nor

unpasteurized.  In reliance on these representations and warranties, he paid a tangible increased

cost for the Juice Product, which was worth less than represented because the Juice Product was,

in fact, equivalent to pasteurized juice.  He also understood that in making the sale, his grocery

store was acting with the knowledge and approval of the Defendants and/or as the agent of the

Defendants.  He further understood that the purchase involved a direct transaction between

himself and Defendants, because his purchase came with Defendants' representations and

warranties that the Juice Product was, in fact, 100% Raw and unpasteurized.

16.     Defendant Hain Celestial Group, Inc. is a Delaware corporation with its global

headquarters at 1111 Marcus Avenue, Lake Success, New York 11042.  Hain Celestial is a

publicly traded company currently registered on the NASDAQ Global Select Market.  It is a

leading natural and organic food and personal care products company that operates in North

America and Europe.  Hain Celestial's net sales in 2012 were $1.378 billion.  In 2012, Hain

Celestial acquired BluePrint and controls it as a wholly-owned subsidiary.

17.     Defendant BluePrintWholesale LLC is a New York limited liability company

headquartered in Long Island City, New York 11101.

18.     Defendant ZSBPW LLC is a New York limited liability company headquartered

at 135 W. 29th Street, New York, New York 10001.

19.     Defendants market and sell their Juice Products widely throughout New York,

California, and other states.  Defendants have manufactured, marketed, and sold the Juice

Products using the deceptive, false, and misleading claims described herein since at least 2012.

Plaintiffs reserve their rights to amend this Complaint to add different or additional defendants,

including without limitation any officer, director, employee, supplier, or distributor of

8

Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.  *The Raw Food Movement*

20.    Raw foodism is a relatively new diet movement known for its health benefits. The movement focuses on the consumption of foods with living enzymes, probiotics, and nutrients in order to help humans fully digest food without relying on their own digestive enzymes.

21.    As the name suggests, consumption of "raw" foods is vital to the raw food movement.  "Raw" foods are usually organic foods that are unprocessed, uncooked, and not decontaminated in order to maintain the presence of enzymes, probiotics, and other qualities in their original state.  Raw foods are favored over otherwise denatured or processed food for two reasons.  First, the treatment process destroys or alters many of the enzymes, nutrients, and vitamins found in food.  Second, raw foodists believe that foods without a significant amount of active enzymes take longer to digest and thus clog up the digestive system and arteries with partially digested fats, proteins, and carbohydrates.

22.     "Raw" foods and juices cannot be pasteurized.  This is because pasteurization preserves and sterilizes by substantially reducing the live, active enzymes that are the essence of raw foods.  Accordingly, truly "Unpasteurized" and "100% Raw" products typically have a shelf life of five days or less.  As a result of their short shelf life and production costs, to be commercially viable, these juices sell for a substantial premium compared to the average 100% pasteurized juices.

23.    To capture part of the ever-growing market for raw juice products, Defendants prominently label and market the Juice Products as "Unpasteurized," "100% Raw," and "Raw

And Organic."  In fact, every side of the Defendants' labeling and packaging includes a Misrepresentation that the product is raw or unpasteurized.  In doing so, they are able to charge a substantial amount – upwards of $10 for 16 ounces – for their Juice Products.[5]  Surprisingly, Defendants' Juice Products, unlike other raw and unpasteurized juices on the market, have a considerably longer shelf life of about 30 days.  This remarkable (for the industry) shelf life is because Defendants use HPP to treat their Juice Products.  Defendants have admittedly used HPP to extend the shelf-life of their Juice Products since at least March 2012.

### B.  The Effect of HPP

24.     This artificial extension of the lifespan of the Juice Products violates the fundamental principles underlying the raw food movement, consumers' expectations, and industry standards.  Without such manipulation, Defendants' Juice Products would be, like all truly raw and unpasteurized juices, extremely vulnerable to spoliation and degradation.  However, such stability and longevity comes at a price.

25.     A direct and unavoidable result of the use of HPP is the destruction of the enzymes, nutrients, probiotics, and minerals that, but for HPP, would be found in the Juice Products.  As such, the Juice Products being sold to consumers have less nutritional value and corresponding health benefits than otherwise non-HPP-treated and unpasteurized juices that are truly 100% Raw.

26.     HPP is an alternative to traditional, thermal pasteurization of food that decontaminates and preserves food products through the use of high pressure.  HPP has a

---

[5] "New technologies such as HP[P] can allow producers to create new markets not possible with old technologies and such benefits are only now being explored. Consumers are generally willing to pay more for greater perceived value." Eammon Hogan, Alan L. Kelly, & Da-Wen Sun, High Pressure Processing of Foods: An Overview in Effect of High Pressure of Food Quality, 25 (2005).

detrimental effect on food and juice products.  Specifically, the HPP process "may inactivate

enzymes and or alter the physical properties of the food material (e.g., denature structural

proteins or densify texture)."[6]  Furthermore, HPP "may also cause greater levels of protein

denaturation and other potential detrimental changes in food quality that could affect the

appearance of and texture of food, compared to the unprocessed product."[7]  As such, it is

undeniable that HPP-treated foods are not identical pre- and post-treatment.  Consequently, foods

that are HPP-treated cannot be considered raw or unpasteurized.

### C.  Defendants' False & Misleading Packaging and Labeling

27.    Defendants represent on the front of each label (excluding the "White Juice"

variety) that the Juice Products are "Unpasteurized Juice Beverage[s]:"



---

[6] Margaret F. Paaterson, Mark Linton & Christopher J. Donna, Introduction to High Pressure
Processing of Food in High Pressure Processing of Food, 3 (2007).
[7] Eammon Hogan, Alan L. Kelly, & Da-Wen Sun, High Pressure Processing of Foods: An
Overview in Effect of High Pressure of Food Quality, 16 (2005).

This is false and misleading because Defendants use the HPP treatment process in the production of the Juice Products.  As discussed above, in the course of sterilizing and extending the shelf life of the Juice Products, HPP also causes the destruction of desirable enzymes, probiotics, nutrients, and vitamins contained in the juices.

28.     Defendants state on the side of each bottle that the Juice Products are "Never Heated" and then go on to explain that "BluePrint uses pressure instead of heat to keep our beverages fresh, raw and safe.  We don't cook juice!"  This is deceptive and misleading because Defendants fail to disclose that the use of HPP results in the destruction of valuable and desirable enzymes, nutrients, and vitamins that a reasonable consumer expects to find in a juice marketed as "100% Raw" and "Unpasteurized."

29.     Additionally, Defendants include their "Manifreshto®" on another side of the bottle.  In particular, Defendants attest that they live by the rule that "Juice should never be cooked.  Cooking juice kills vitamins and live enzymes.  Even 'flash' pasteurized means cooked."  When looked at in context of the bottle, this too is misleading and deceptive.  Indeed, this bolsters Defendants' misrepresentation that the Juice Products are unpasteurized because it implies that Defendants avoid methods that destroy the nutritional benefits of raw juices.  However, in context of the bottle as a whole, this is misleading because Defendants omit the fact that HPP, like cooking juice, also "kills vitamins and live enzymes."



30.     Defendants also use the phrases "100% Raw" and "Raw And Organic" in the labeling and packaging of the Juice Products.  The use of both of these terms in connection with the Juice Products is false and misleading.  Juice is 100% Raw only if it contains *all* of the same enzymes, nutrients, probiotics, vitamins, and minerals as the fruits and vegetables had prior to being juiced.  However, that is not the case with the Juice Products.  Once subjected to HPP, some of the enzymes, nutrients, vitamins, probiotics, and minerals contained in the pre-HPP Juice Products are no longer present.  In fact, Defendants have admitted that HPP has an impact "on the structure of the components responsible for nutrition and flavor."[8]  As such, Defendants cannot truthfully market the Juice Products as "100% Raw" when, in reality, the pre-HPP and post-HPP juices are not identical.

---

[8] *See* http://www.blueprintjuice.com/hpp.

31.    Defendants state on the side of the bottle that the Juice Products are "Never

Heated" and then go on to explain that "BluePrint uses pressure instead of heat to keep our

beverages fresh, raw and safe. We don't cook juice!"  This representation is also deceptive and

misleading because Defendants fail to disclose that the use of HPP results in the destruction of

valuable and desirable enzymes, nutrients, probiotics, and vitamins that a reasonable consumer

expects to find in a juice marketed as "100% Raw" and "Unpasteurized."

## CLASS ACTION ALLEGATIONS

32.    Plaintiffs seek to represent a class defined as all persons in the United States who

purchased the Juice Products for personal or household use, excluding those who purchased the

Juice Products for resale (hereafter, the "Class").

33.    Plaintiffs Gillead, Braner, and Ruiz seek to represent a subclass defined as all

members of the Class who purchased Juice Products within the State of California (the

"California Subclass").

34.    Plaintiff Stark also seeks to represent a subclass defined as all members of the

Class who purchased Juice Products within the State of New York (the "New York Subclass").

35.    Members of the Class and Subclasses are so numerous that their individual

joinder herein is impracticable.  On information and belief, members of the Class and the New

York and California Subclasses number in the hundreds of thousands.  The precise number of

Class and Subclass members and their identities are unknown to Plaintiffs at this time but may be

determined through discovery of Defendants' records.  Class members may be notified of the

pendency of this action by mail, email, and/or publication through the distribution records of

Defendants and third party retailers and vendors.

36.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

a.    Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

b.    Whether Defendants breached an express warranty made to Plaintiffs and the Class;

c.    Whether Defendants breached an implied warranty made to Plaintiffs and the Class;

d.    Whether Defendants were unjustly enriched by their conduct;

e.    Whether Defendants advertised or marketed the Juice Products in a way that was false or misleading;

f.    Whether Defendants' conduct was false, misleading, or reasonably likely to deceive ordinary consumers;

g.    Whether Class members have been injured by Defendants' conduct;

h.    Whether Class members suffered an ascertainable loss as a result of Defendants' Misrepresentations; and

i.    Whether Class members are entitled to damages, restitution, injunctive relief, and/or monetary relief and, if so, the amount and nature of such relief.

37.     Plaintiffs Gillead, Braner, and Ruiz, and members of the California Subclass have questions of fact and common law to them that predominate over any questions affecting only individual members of the California Subclass.  These common questions include:

a.    Whether Defendants violated California Civil Code §§ 1750, *et seq.*;

15

      b.   Whether Defendants violated California Business & Professions Code §§ 17200, *et seq.*;

      c.   Whether Defendants violated California Business & Professions Code § 17500; and

      d.   The appropriate measure of damages to be received by Plaintiffs and the California Subclass.

38.     Plaintiff Stark and members of the New York Subclass have questions of fact and common law to them that predominate over any questions affecting only individual members of the New York Subclass.  These common questions include:

      a.   Whether Defendants violated New York General Business Law § 349; and

      b.   The appropriate measure of damages to be received by Plaintiffs and the New York Subclass.

39.     The claims of the named Plaintiffs are typical of the claims of the Class in that Plaintiffs (a) were exposed to Defendants' false and misleading packaging, marketing, and promotion of the Juice Products; (b) relied on Defendants' Misrepresentations; and (c) suffered a loss as a result of their purchases.  Each Class member was subjected to the same conduct, was harmed in the same way, and has claims for relief under the same legal theories.

40.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

41.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the

resources to undergo the burden and expense of individual prosecution of the complex and

extensive litigation necessary to establish Defendants' liability.  Individualized litigation

increases the delay and expense to all parties and multiplies the burden on the judicial system

presented by the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendants' liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation Of The Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. §§ 2301,** *et seq.*

42.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully

set forth herein.

43.     Plaintiffs bring this claim individually and on behalf of the members of the Class

against all Defendants.

44.     The Juice Products are consumer products as defined in 15 U.S.C. § 2301(1).

45.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

46.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and

(5).

47.     In connection with the sale of the Juice Products, Defendants issued written

warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that the Juice

Products were: (i) "100% Raw," (ii) "Unpasteurized," and (iii) "Raw and Organic."

48.     In fact, the Juice Products do not conform to the Express Warranties because each

of the Express Warranties is false and misleading in that the Juice Products are subjected to HPP,

17

thus rendering them pasteurized and not raw in contradiction to the representations and warrantied on the product packaging.

49.     By reason of Defendants' breach of these Express Warranties, Defendants violated the statutory rights due Plaintiffs and Class members pursuant to the MMWA, thereby damaging Plaintiffs and Class members. 15 U.S.C. §§ 2301, *et seq.*

50.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased the Juice Products if they had known that the products were in fact, neither 100% Raw nor unpasteurized; (b) they paid a price premium for the Juice Products based on Defendants' Express Warranties; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.

51.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class are entitled to recover the damages caused to them by Defendants' breaches of written and implied warranties, which either constitute the full purchase price of the Juice Products or the difference in value between the Juice Products as warranted and the Juice Products as sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class in connection with the commencement and prosecution of this action.

## COUNT II
### Breach Of Express Warranty

52.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

53.     Plaintiffs bring this claim individually and on behalf of the members of the Class against all Defendants.

18

54. In connection with the sale of the Juice Products, Defendants issued written Express Warranties. Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers expressly warranted that the Juice Products were fit for their intended purpose as unpasteurized, raw juices by making the Express Warranties to Plaintiffs and the Class.

55. Defendants' Express Warranties, their affirmations of fact and promises made to Plaintiffs and the Class regarding the Juice Products, and their descriptions of the Juice Products contained in advertisement and on product labeling and product packaging became part of the basis of the bargain between Defendants and Plaintiffs and the Class, thereby creating express warranties that the Juice Products would conform to those affirmations of fact, representations, promises, and descriptions.

56. The Juice Products are not in fact (a) "100% Raw," (b) "Unpasteurized," and (c) "Raw And Organic" because the products undergo HPP, rendering them neither raw nor unpasteurized.

57. Plaintiffs and members of the Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased the Juice Products if they had known that the products were in fact, neither 100% Raw nor unpasteurized; (b) they paid a price premium for the Juice Products based on Defendants' Express Warranties; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised. As a result, Plaintiffs and the Class members have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

## COUNT III
### Breach Of The Implied Warranty Of Merchantability

58. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

59.     Plaintiffs bring this claim individually and on behalf of the members of the Class against all Defendants.

60.     Defendants are and were at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed, and marketed the Juice Products, which are "goods" within the meaning of the UCC.  Consequently, Defendants impliedly warranted that the Juice Products were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, that they were of fair average quality within the description, that they were adequately labeled, and that they would conform to the promises or affirmations of fact made on their container or labels.  However, each of these implied warranties was false with respect to the goods of the kind sold to Plaintiffs and members of the Class and Subclasses.

61.     In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased the Juice Products for the purpose of consuming juices that were raw and unpasteurized.

62.     The Juice Products were not altered by Plaintiffs or Class members.

63.     The Juice Products were defective when they left the exclusive control of Defendants.

64.     Defendants knew the Juice Products would be purchased and consumed by Plaintiffs and Class members without additional testing for nutritional value.  The Juice Products were unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

65.     More specifically, Defendants breached their implied warranty of merchantability to Plaintiffs and the Class because the Juice Products would not pass without objection in the

trade because they were incapable of performing the functions they were intended to perform. They are not "100% raw" and "Unpasteurized," and do not have the benefits of the live enzymes, vitamins, and nutrients that are present in unpasteurized raw juices.

66.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members were injured because (a) they would not have purchased the Juice Products if they had known that the products were in fact, neither 100% Raw nor unpasteurized; (b) they paid a price premium for the Juice Products based on Defendants' Express Warranties; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiffs and the Class members have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

## COUNT IV
### Unjust Enrichment / Common Law Restitution

67.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein

68.     Plaintiffs bring this claim individually and on behalf of the members of the Class against all Defendants.

69.     Plaintiffs and Class members conferred benefits on Defendants by purchasing the Juice Products.

70.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Juice Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendants' Misrepresentations about the Juice Products, which caused injuries to Plaintiffs and Class members because they would not have purchased the Juice Products if the true facts had been known.

71.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq.***

72.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

73.     Plaintiffs Gillead, Braner, and Ruiz (the "California Plaintiffs") bring this claim individually and on behalf of the members of the California Subclass against all Defendants.

74.     In violation of Cal. Civ. Code §§ 1750, *et seq.*, Defendants have engaged in unfair and deceptive acts and practices in the course of transactions with the California Plaintiffs and the California Subclass.  Such transactions were intended to and did result in the sales of goods to the California Plaintiffs and the California Subclass.  The California Plaintiffs and the California Subclass are "consumers" as that term is used in the CLRA because they sought or acquired Defendants' goods or services for personal, family, or household purposes.

75.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by making the Misrepresentations.

76.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or mode, if they are of another."  Defendants violated this provision by making the Misrepresentations.

77. Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised." Defendants violated this provision by making the Misrepresentations.

78. The California Plaintiffs and members of the California Subclass were injured as a direct and proximate result of Defendants' CLRA violations because (a) they would not have purchased the Juice Products if they had known that the products were in fact, neither 100% Raw nor unpasteurized; (b) they paid a price premium for the Juice Products based on Defendants' Misrepresentations; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised. As a result, California Plaintiffs and the California Subclass have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

79. The California Plaintiffs and California Subclass members request injunctive relief enjoining Defendants from engaging in further deceptive acts and practices in relation to the advertising, promotion, and sale of the Juice Products as well as ordering that Defendants conduct corrective advertising.

80. On July 2, 2013, prior to filing this Complaint, notice letters were served on Defendants Hain Celestial, BluePrintWholeSale LLC, and ZSBPW LLC which complied in all respects with Cal. Civ. Code § 1782(a). Plaintiffs, by and through their counsel, sent each Defendant a letter via certified mail, return receipt requested, advising them that they were in violation of the CLRA and that they must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770. A true and correct copy of Plaintiffs' letter is attached hereto as Exhibit A.

81. Defendants failed to respond adequately to the above-described notices within thirty (30) days of receipt, pursuant to Cal. Civ. Code § 1782(b). Therefore, on behalf of the

California Subclass, pursuant to Cal. Civ. Code § 1780, the California Plaintiffs additionally asserts claims for actual damages, as set forth above, or return of money paid for the Juice Products, plus any other relief that the court deems proper, plus reasonable attorneys' fees and court costs.

## COUNT VI
### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

82.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

83.     Plaintiffs Gillead, Braner, and Ruiz bring this claim individually and on behalf of the members of the California Subclass against all Defendants.

84.     Defendants are subject to the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 1200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

85.     In connection with the sale of Defendants' Juice Products, Defendants warranted that their products were "Unpasteurized" and "100% Raw."  Defendants' Juice Products are neither unpasteurized nor raw, as they undergo a treatment process known as HPP which neutralizes the benefits of the live enzymes, vitamins, and nutrients that would otherwise be retained in an unpasteurized juice.

86.     Defendants' conduct, described herein, violated the "unlawful" prong of the UCL by violating the MMWA, the CLRA, and the FAL.

87.     Defendants' conduct, described herein, violated the "unfair" prong of the UCL by violating the policy or spirit of the MMWA, the CLRA, and the FAL.

88.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentations.

89.    The California Plaintiffs and members of the California Subclass were injured as a direct and proximate result of Defendants' UCL violations because: (a) they would not have purchased the Juice Products if they had known that the products were in fact, neither 100% Raw nor unpasteurized; (b) they paid a price premium for the Juice Products based on Defendants' Misrepresentations; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.  As a result, California Plaintiffs and the California Subclass have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

### COUNT VII
### Violation Of California's False Advertising Law ("FAL"), Calif. Business & Professions Code §§ 17500, *et seq.*

90.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

91.    Plaintiffs Gillead, Braner, and Ruiz bring this claim individually and on behalf of the members of the California Subclass against all Defendants.

92.    California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

93.     Defendants committed acts of false advertising, as defined by § 17500, by making the Misrepresentations described herein.

94.     Defendants knew or should have known, through the exercise of reasonable care, that the Misrepresentations were untrue and misleading.

95.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

96.     The California Plaintiffs and the California Subclass members lost money or property as a direct and proximate result of Defendants' FAL violations because: (a) they would not have purchased the Juice Products if they had known that the products were in fact, neither 100% Raw nor unpasteurized; (b) they paid a price premium for the Juice Products based on Defendants' Misrepresentations; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.  As a result, the California Plaintiffs and the California Subclass have been damaged  either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

## COUNT VIII
### Deceptive Acts or Practices,
### New York Gen. Bus. Law § 349

97.     Plaintiff Stark repeats the allegations in the paragraphs above as if fully set forth herein.

98.     Plaintiff Stark brings this claim individually and on behalf of the members of the New York Subclass against all Defendants.

99.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making the Misrepresentations.

100.     The foregoing deceptive acts and practices were directed at consumers.

26

101.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Juice Products in order to induce consumers to purchase same.

102.    Plaintiff Stark and members of the New York Subclass were injured because: (a) they would not have purchased the Juice Products if they had known that the products were in fact, neither 100% Raw nor unpasteurized; (b) they paid a price premium for the Juice Products based on Defendants' Misrepresentations; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff Stark and the New York Subclass have been damaged  either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

103.    On behalf of himself and other members of the New York Subclass, Plaintiff Stark seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

104.    WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seeks judgment against Defendants as follows:

a. For an order certifying the nationwide Class, the California Subclass, and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel;

b. For an order declaring that Defendants' conduct violates the statues reference herein;

c.  For an order finding in factor of Plaintiffs, the nationwide Class, the California Subclass, and the New York Subclass on all counts asserted herein;

d.  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper;

h.  For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, and expenses;

i.  Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.  For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated:  October 15, 2013                    Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:  _____
                                                        Neal J. Deckant

                                            Scott A. Bursor (SB1141)
                                            Joseph I. Marchese (JM1976)
                                            Neal J. Deckant (ND1984)
                                            Yitz Kopel (YK5522)
                                            888 Seventh Avenue
                                            New York, NY 10019
                                            Telephone:  (212) 989-9113
                                            Facsimile:  (212) 989-9163
                                            E-Mail: scott@bursor.com
                                                      jmarchese@bursor.com
                                                      ndeckant@bursor.com
                                                      ykopel@bursor.com


                                            SHEEHAN & ASSOCIATES, P.C.
                                            Spencer Sheehan (SS2056)
                                            Joshua Levin-Epstein (JL1980)
                                            15 Morris Lane
                                            Great Neck, NY 11024
                                            Telephone: (347) 635-4160
                                            Facsimile:  (516) 284-7800
                                            E-Mail: spencer@spencersheehan.com
                                                      josh@spencersheehan.com


                                            *Attorneys for Plaintiffs*

1    I, Reyna Gillead, declare as follows:

2         1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal

3    knowledge of the facts stated herein and, if called as a witness, I could and would testify

4    competently thereto.

5         2.      The complaint filed in this action is filed in the proper place for trial under

6    California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business

7    in this District.

8         3.      While living in California, I purchased BluePrint juice for personal consumer use.  I

9    read the label for BluePrint juice, and purchased it in reliance on the claims that BluePrint was

10   "raw," "unpasteurized," and "cold-pressed."  The representations on the label were substantial

11   factors influencing my decision to purchase BluePrint juice.  I would not have purchased BluePrint

12   juice had I known that it is not, in fact, raw, unpasteurized, or cold-pressed.

13        I declare under the penalty of perjury under the laws of the State of California that the

14   foregoing is true and correct, executed on October 1st, 2013 at Valley Village California.

15

16

17                                                    _____
                                                           REYNA GILLEAD
18

19

20

21

22

23

24

25

26

27

28

I, Kenna Braner, declare as follows:

1.　　　I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.　　　The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.　　　While living in California, I purchased BluePrint juice for personal consumer use.  I read the label for BluePrint juice, and purchased it in reliance on the claims that BluePrint was "raw," "unpasteurized," and "cold-pressed."  The representations on the label were substantial factors influencing my decision to purchase BluePrint juice.  I would not have purchased BluePrint juice had I known that it is not, in fact, raw, unpasteurized, or cold-pressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on October __1__, 2013 at _Los Angeles_, California.


_____
KENNA BRANER

1      I, Oscar Ruiz, declare as follows:

2      1.    I am a plaintiff in this action and a citizen of the State of California.  I have personal

3  knowledge of the facts stated herein and, if called as a witness, I could and would testify

4  competently thereto.

5      2.    The complaint filed in this action is filed in the proper place for trial under

6  California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business

7  in this District.

8      3.    While living in California, I purchased BluePrint juice for personal consumer use.  I

9  read the label for BluePrint juice, and purchased it in reliance on the claims that BluePrint was

10  "raw," "unpasteurized," and "cold-pressed."  The representations on the label were substantial

11  factors influencing my decision to purchase BluePrint juice.  I would not have purchased BluePrint

12  juice had I known that it is not, in fact, raw, unpasteurized, or cold-pressed.

13      I declare under the penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct, executed on October _8th_, 2013 at ___Porter Ranch___, California.

15

16

17                                _____

18                                     OSCAR RUIZ

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

# BURSOR & FISHER

P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

SCOTT A. BURSOR
Tel: 212.989.9113
Fax: 212.989.9163
scott@bursor.com

July 2, 2013

*Via Certified Mail - Return Receipt Requested*

The Hain Celestial Group, Inc.
1111 Marcus Avenue
Lake Success, New York 11042

ZSBPW LLC
135 W 29th St #704
New York, New York 10001

BLUEPRINTWHOLESALE LLC
135 W 29th St #704
New York, New York 10001

Re:    *Demand Letter Pursuant to California Civil Code § 1782,*
       *Uniform Commercial Code § 2-607, and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Michael Stark, Oscar Ruiz, Reyna Gillead, and Kenna Braner, and all other persons similarly situated, arising from violations of numerous provisions of New York and California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice concerning the breaches of express and implied warranties described herein pursuant to U.C.C. §§ 2-313, 2-314, and 2-607.

You have participated in the manufacture, marketing, and sale of BluePrint Juice and BluePrint Cleanse (together, "BluePrint"). The label for BluePrint states that it is "raw" and "unpasteurized." These statements are false and misleading. In fact, BluePrint products are subjected to a pasteurization process known as high pressure processing ("HPP").

The fundamental principle behind raw foodism, also called rawism, is that plant foods are the most wholesome for the body in their most natural state – uncooked and unprocessed. But BluePrint is not sold in its most natural state, and it is heavily processed. BluePrint is subjected to HPP to artificially extend its shelf-life. HPP is a method of preserving and sterilizing food by processing the product under very high pressure. The HPP process is a form of pasteurization that inactivates enzymes and microorganisms. Food that is subjected to HPP cannot be considered "raw" or "unpasteurized."

BURSOR&FISHER
P.A.

Mr. Stark, a resident of New York, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  He would not have purchased BluePrint if he had known that the product was not "raw" or "unpasteurized" because it was subjected to HPP.

Mr. Ruiz, a resident of California, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  He would not have purchased BluePrint if he had known that the product was not "raw" and "unpasteurized" because it was subjected to HPP.

Ms. Gillead, a resident of California, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  She would not have purchased BluePrint if she had known that the product was not "raw" and "unpasteurized" because it was subjected to HPP.

Ms. Braner, a resident of California, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  She would not have purchased BluePrint if she had known that the product was not "raw" and "unpasteurized" because it was subjected to HPP.

Mr. Stark, Mr. Ruiz, Ms. Gillead, and Ms.  Braner are acting on behalf of a class defined as all persons in the United States who purchased BluePrint (hereafter, the "Class").

Mr. Ruiz, Ms. Gillead, and Ms. Braner are also acting on behalf of a subclass of Class members who purchased BluePrint in the state of California (the "California Sublcass").

To cure the defects described above, we demand that you (1) cease and desist from further sales of BluePrint; (2) issue an immediate recall of BluePrint; and (3) make full restitution to all purchasers of BluePrint of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning product development and production of BluePrint;

2. All communications with the U.S. Department of Agriculture, the U.S. Food and Drug Administration, and the U.S. Environmental Protection Agency concerning the product development, manufacturing, marketing and sales of BluePrint;

3. All documents concerning the advertisement, marketing, or sale of BluePrint; and

4. All communications with customers concerning complaints or comments concerning BluePrint.

BURSOR&FISHER
P.A.

 

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

L. Timothy Fisher